**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-1508
_____

K. L.,
Appellant

v.

RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY; MARQUES FORD; JOHN BOWERS; ABC, INC. 1-10 (Fictitious Entities); JOHN DOES 1-20 (Fictitious Entities and/or Persons)

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3-16-cv-09270)
Honorable Michael A. Shipp, U.S. District Judge

_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on May 26, 2022

Before: KRAUSE, PHIPPS, *Circuit Judges*, and STEARNS[*], *District Judge.*

(Filed: June 21, 2022)
_____

OPINION[**]
_____

---

[*] Honorable Richard G. Stearns, United States District Court Judge for the District of Massachusetts, sitting by designation.

[**] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

STEARNS, *District Judge*.

Appellant K.L. challenges the District Court's grant of summary judgment in favor of Appellee Rutgers University. Although the assault K.L. experienced is undeniably tragic, because K.L. fails to raise any disputed issue of material fact, we are constrained to affirm.

On November 14, 2015, K.L.—at the time a freshman at Rutgers—complained of having been sexually assaulted by her then-boyfriend John Bowers and his friend Marques Ford, who were also freshmen at Rutgers and members of the school's football team. Rutgers investigated K.L.'s complaint and ultimately expelled Ford and suspended Bowers. K.L. withdrew from Rutgers in April of 2016.

In July, four months prior to the November 14, 2015 assault, a naked and inebriated Ford trespassed into a female student's on-campus apartment at 4:00 a.m. The student reported Ford to the Rutgers University Police and to Rutgers residence-life staff. Rutgers investigated and sanctioned Ford by placing him on disciplinary probation and requiring him to undergo an Alcohol and Drug Assistance Program ("ADAP") assessment.

On November 14, 2016, K.L. filed this lawsuit in the New Jersey Superior Court against Rutgers, Bowers, Ford, and several unnamed entities and individuals. Rutgers removed the case to federal court, and the District Court granted summary judgment for Rutgers. The District Court had jurisdiction pursuant to 28 U.S.C. § 1332 and

supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  We have jurisdiction under 28 U.S.C. § 1291.[1]

K.L. first contests the District Court's rejection of her claim that Rutgers was deliberately indifferent to her Title IX rights.  She contends that a reasonable jury could have found the investigation of Ford and Bowers to be "biased" and the sanctions imposed a "sham," Appellant Br. 15, and further that she would not have been assaulted had Rutgers "adequately responded" to the earlier incident involving Ford, *id.* at 9.  The crux of K.L.'s argument is that Eugene Bataille, an employee of the Rutgers Athletics Department and an alleged "fixer" for the Rutgers football team, intervened in both investigations to procure leniency for Ford.

> To prevail on her Title IX claim, K.L. must show:
>
> 1) [Rutgers] received federal funds; 2) sexual harassment occurred; 3) [Rutgers] exercised substantial control over the harasser and the context in which the harassment occurred; 4) [Rutgers] had actual knowledge of the harassment; 5) [Rutgers] was deliberately indifferent to the harassment; and 6) the harassment was so severe, pervasive, and objectively offensive that it deprived [K.L.] of her access to the educational opportunities or benefits provided by the school.

*Hall v. Millersville Univ.*, 22 F.4th 397, 408 (3d Cir. 2022).  Here, the only element seriously in dispute is whether Rutgers was deliberately indifferent to K.L.'s Title IX rights.  As this Court noted in *Hall*, an educational institution is not deliberately indifferent to a student's rights if it "respond[s] to known harassment in a manner 'that is not clearly

---

[1] Our review of a District Court's order granting summary judgment is "plenary." *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014).

3

unreasonable.'" *Id.* at 410 (quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 649 (1999)).

We agree with the District Court that the record does not support a finding that Rutgers's response to either incident was clearly unreasonable. As the District Court pointed out, Rutgers answered the July 2015 incident by 1) "dispatch[ing] police officers and residence life staff to gather information and ensure [the student] was safe"; 2) checking in on the student and ensuring that she had adequate counseling and psychiatric resources; and 3) filing "a juvenile delinquency complaint and . . . issu[ing] sanctions against Ford." App. 14; *see also* App. 497–98, 2054. Further, with regard to the November 2015 incident, Rutgers 1) reported the incident to various authorities, including the Middlesex County Prosecutor's Office and Rutgers's Title IX Coordinator; 2) offered "support and counseling" through an advocate from the school's Office for Violence Prevention and Victim Assistance; 3) explained to K.L. the contours of a Title IX investigation and the hearing process; 4) initiated an investigation against Ford and Bowers; and, 5) upon concluding its investigation, imposed stiff sanctions on Ford and Bowers, including expulsion for Ford and suspension for Bowers. App. 13-16; *see also* App. 2058–60, 2063–65. There is no evidence that Bataille's alleged involvement influenced Rutgers's response to either incident.[2] Even if other steps could have been

---

[2] Rutgers investigators testified that they found the allegations against Ford to be substantiated, giving rise to admissions of misconduct and sanctions for both incidents. Thus, Bataille's alleged involvement had no perceptible impact on the results.

taken, no reasonable juror could conclude that Rutgers was deliberately indifferent. *See Davis*, 526 U.S. at 648.

We can dispose of K.L.'s remaining claims against Rutgers *in brevis*. K.L.'s Section 1983 claims, arising under theories of state-created danger and failure to train and supervise, were properly dismissed because—as previously discussed—Rutgers was not deliberately indifferent to K.L.'s rights.[3] Similarly, K.L.'s claim under the New Jersey Law Against Discrimination ("NJLAD") fails because K.L. has not demonstrated that Rutgers "failed to reasonably address" the July 2015 indecent exposure incident that preceded her sexual assault. *L.W. ex rel. L.G. v. Toms River Reg'l Schs. Bd. of Educ.*, 915 A.2d 535, 547 (N.J. 2007).[4] Finally, K.L.'s negligence and negligent supervision claim is

---

[3] To state a claim under the state-created danger theory, a plaintiff generally must show that the "state actor acted with a degree of culpability that shocks the conscience." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 431 (3d Cir. 2006). However, in a situation where, as here, "deliberation is possible and officials have the time to make 'unhurried judgments,' deliberate indifference is sufficient" to find the requisite level of culpability. *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 246 (3d Cir. 2016) (quoting *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006)). Similarly, to demonstrate that a state university failed to adequately train and supervise its staff members and students, a plaintiff must show that the university "acted with 'deliberate indifference' toward the rights of its students." *Sanford*, 456 F.3d at 309 (quoting *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 479 (3d Cir. 2003)).

[4] To establish a claim under the NJLAD,

> an aggrieved student must allege discriminatory conduct that would not have occurred "but for" the student's protected characteristic, that a reasonable student of the same age, maturity level, and protected characteristic would consider sufficiently severe or pervasive enough to create an intimidating, hostile, or offensive school environment, and that the school district failed to reasonably address such conduct.

*L.W.*, 915 A.2d at 547.

5

barred by New Jersey's Charitable Immunity Act ("CIA"), N.J. Stat. Ann. § 2A:53A-7 *et seq.*[5]

For the foregoing reasons, we will affirm the District Court.

---

[5] "State colleges plainly meet the statutory definition of a charitable institution under the CIA—a 'nonprofit corporation . . . organized exclusively for . . . educational purposes.'" *O'Connell v. State*, 795 A.2d 857, 866 (N.J. 2002) (quoting N.J. Stat. Ann. § 2A:53A-7a). Pursuant to the CIA, "a dormitory resident injured in the dormitory as a result of the *negligence* of the university or its employees or agents would generally be barred from suing the university or its employees or agents." *Orzech v. Fairleigh Dickinson Univ.*, 985 A.2d 189, 194 (N.J. Super. Ct. App. Div. 2009) (emphasis added), *cert. denied*, 991 A.2d 232 (N.J. 2010). Although K.L. argues that Rutgers's actions were not merely negligent but rather were "reckless, intentional, and willful," App. 22, K.L.'s Amended Complaint alleges only negligence and negligent supervision, and more importantly, the record is devoid of any evidence that Rutgers acted recklessly or willfully.

6